IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PC PUERTO RICO LLC,

    **Plaintiff,**

        **v.**                 **CIVIL NO.** 12-1973 (FAB)

NIDAL K. EL SMAILI, JOHN DOE,
AND ABC COMPANY, INC.,

    **Defendants.**

**MEMORANDUM AND ORDER**

BESOSA, District Judge

## I.   BACKGROUND

On November 30, 2012, plaintiff PC Puerto Rico, LLC (PCPR) filed a complaint against defendant Nidal K. El Smaili, John Doe, and ABC Company, Inc. (Docket No. 1.)  In the complaint, plaintiff alleges trademark infringement and dilution pursuant to the Lanham Act, 15 U.S.C. Section 1051, *et seq.*, the Trademark Dilution Revision Act , 15 U.S.C. Section 1125, *et seq.*, and the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801, *et seq.* Id.  The complaint also alleges Puerto Rico law claims.  Id.  On that same date, plaintiff filed an *ex parte* motion for a temporary restraining order, a preliminary injunction, a permanent injunction, and an order to show cause.  (Docket No. 2.)  On

December 3, 2012, the Court denied plaintiff's motion for an *ex
parte* temporary restraining order.  (Docket No. 6.)  Plaintiff's
motion for a preliminary injunction, a permanent injunction, and an
order to show cause remained pending.  Id.  Defendant failed to
answer plaintiff's complaint.  On February 12, 2013, the Court held
a hearing regarding plaintiff's motion for a preliminary
injunction.  (Docket Nos. 14 & 15.)  At the hearing, the Court
indicated that the defendant is in default and that he could not
present evidence.  He was represented by counsel who could cross-
examine the witnesses presented by PCPR.  During the hearing, the
Court instructed the parties to file proposed findings of fact and
conclusions of law by February 15, 2013.  (Docket No. 14.)  On
February 14, 2013, plaintiff submitted its proposed findings of
fact and conclusions of law.  (Docket No. 16.)  On February 19,
2013, five days after the Court's deadline, defendant filed a
memorandum containing his proposed findings of fact and conclusions
of law.  (Docket No. 17.)  After considering the proposed findings
of fact and conclusions of law in addition to the evidence
presented at the February 12, 2013 hearing, the Court **GRANTS**
plaintiff's requests for immediate permanent injunctive relief and
damages.

## II.  FINDINGS OF FACT

### A.  The Sub-Lease Agreements

1.  On April, 21 2010 and September 16, 2010, plaintiff PCPR[1] and defendant/retailer Nidal K. El Smaili ("defendant")[2] entered into Sub-Lease Agreements pursuant to which defendant was

---

[1] The contracts were originally entered into between Chevron Puerto Rico, LLC and defendant.  Effective August 1, 2012, however, Chevron Puerto Rico, LLC changed its name to PC Puerto Rico, LLC ("PCPR").

[2] As noted by the Honorable Court, because defendant was found to be in default, he waived all affirmative defenses and was not allowed to present any documentary evidence or witnesses in his defense as to damages or the injunctive relief sought.

granted the right to buy and resale Texaco[3] branded petroleum products and to operate two stations owned by PCPR and located in Camuy, identified as station #556, and Aguada, identified as station #662, using the Texaco trademark. [Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 1, ¶ 1].

> 2. The Sub-Lease Agreements were for a term of three (3) years, effective April 1, 2010 and November 1, 2010, respectively, and thereafter on a month to month basis.

---

[3] PCPR is currently authorized to enjoy the exclusive use of the trademark "TEXACO" and the color combination, font, and design marks for the canopies of its gasoline stations, which have been registered in the United States Patent and Trademark Office under Registration Nos. 2,259,016 and 2,256,757 and related registrations. The Texaco trademark appeared registered in the United States Patent and Trademark Office under Registration Nos. 57,902; 794,947 and 1,209,440, and related registrations. These registrations are in full force and effect, unrevoked and uncanceled. Copies of the certificates of registration for the marks are attached to the Complaint as Exhibits 1a and 1b. PCPR has continuously engaged in the production, distribution, and sale of petroleum related products under the business name of "TEXACO" since acquiring the exclusive right to the use of the trade name Texaco, and its related trade names and trademarks, in the distribution and marketing of gasoline and petroleum related products, amongst others, through authorized independent dealers throughout the Commonwealth of Puerto Rico, on July 31, 2012. PCPR is currently authorized to enjoy the exclusive use of the trademark "TEXACO", which has been registered in the United States Patent and Trademark Office under Registration Nos. 57,902; 794,947; 1,209,440; 1,222,304; 1,222,305 and 1,222,306. These registrations are in full force and effect, unrevoked and uncanceled. Copies of the certificates of registration for the marks are attached to the Complaint as Exhibits 2 (a-h).

[Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 1, ¶ 1].

3.    The Sub-Lease Agreements continue in effect so long as the primary Lease Agreements continue in force and PCPR does not elect to terminate them in the manner specifically set out in the Sub-Lease Agreements.   [Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 9, ¶ 13(a)].

4.    The Sub-Lease Agreements provide that defendant must make all gas and rent payments via electronic wire transfer to a pre-approved bank account of PCPR.  [Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 4, ¶ 4(b)].

5.    The Sub-Lease Agreements provide that defendant must maintain the condition of all pumps, tanks, and other equipment owned by PCPR by conducting detailed daily, weekly, and monthly maintenance; these provisions are designed to facilitate PCPR's compliance with applicable federal and state environmental laws, rules, and regulations, all of which require compliance with strict monitoring and record-keeping programs.  [Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 1, ¶¶ 16-20].

6.    The Sub-Lease Agreements provide that in the event defendant fails to comply with any of his duties under the agreements, PCPR would be entitled to terminate the agreements.

[Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 6, ¶ 7(b)].

       7.   The Sub-Lease Agreements authorize their termination pursuant to certain circumstances, including the following:  the occurrence of any event which constitutes a breach of contract; if the defendant fails to make his best effort to comply with the provisions of the agreements; in the event the defendant fails to make timely payments of any monies owed to PCPR; in the event the defendant violates the trademarks; in the event that the defendant shuts down a station or stations for a period of 7 consecutive days without selling gasoline; if the defendant commits dishonest, fraudulent, or otherwise illegal acts; or for any termination grounds available under applicable law.  [Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 6, ¶ 7(b)(1)-(13)].

       8.   Pursuant to the terms of the Sub-Lease Agreements, if PCPR is made a party to any lawsuit or any legal action as a result of any act of defendant resulting in non-compliance with the terms of the Sub Lease Agreements, defendant must indemnify and hold PCPR harmless from all expenses, fines, suits, proceedings, claims, losses, damages, liabilities or actions of any kind or nature, including but not limited to, costs, and attorneys' fees.

Civil No. 12-1973 (FAB)                                          7

[Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 8, ¶ 11].

      9.   The Sub-Lease Agreements constitute a part of the Franchise Agreements pursuant to the Petroleum Marketing Practices Act ("PMPA").

    **B.   The Supply Agreements**

      10.   On April 21, 2010 and September 16, 2010, PCPR and defendant entered into Supply Agreements pursuant to which defendant was granted the right to buy and resale Texaco branded petroleum products and to operate the two stations owned by PCPR located in Camuy, identified as #556, and Aguada, identified as #662, using the Texaco trademark.   [Plaintiff's Exhibits 2 (Camuy Station) and 4 (Aguada Station) at p. 1, ¶ 1].

      11.   The Supply Agreements were for a term of three (3) years, effective April 1, 2010 and November 1, 2010, respectively, and thereafter on a month to month basis; they were subject to the duration of the leasing agreements and continued in effect so long as the lease agreements continued in force.   [Plaintiff's Exhibits 2 (Camuy Station) and 4 (Aguada Station) at p. 1, ¶ 1].

      12.   The Supply Agreements provide that defendant would only use the marks, registered marks, trademarks, names, service distinctions, and/or color patterns that PCPR expressly authorized

the defendant to use as part of the operation of the stations. [Plaintiff's Exhibits 2 (Camuy Station) and 4 (Aguada Station), Supply Agreements at p. 2, ¶ 4].

13.   The Supply Agreements provide that in the event defendant failed to comply with any of his duties under the agreements, PCPR would be entitled to terminate them. [Plaintiff's Exhibits 2 (Camuy Station) and 4 (Aguada Station) at p. 4, ¶ 7(b)].

14.   The Supply Agreements authorize the termination of the Agreements pursuant to certain circumstances, including the following:  the occurrence of an event which constitutes a breach of contract; if the defendant fails to make his best effort to comply with the provisions of the agreements; in the event the defendant fails to make prompt payments of any monies owed to PCPR; in the event the defendant violates the trademarks; in the event that the defendant shuts down a station or stations for a period of seven (7) consecutive days without selling gasoline; if the defendant commits dishonest, fraudulent, or otherwise illegal acts; or for any termination grounds available under applicable law. [Plaintiff's Exhibits 2 (Camuy Station) and 4 (Aguada Station) at p. 4, ¶ 7(b)(1)-(13)].

15.   The Sub-Lease Agreements provide that the failure to comply with any of termination provisions set out in paragraph 7(b)

of the Supply Agreements may result in the automatic termination of both the Sub-Lease Agreements and Supply Agreements. [Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 10, ¶ 14].

16.   The   Supply   Agreements   constitute   part   of   the Franchise Agreements pursuant to the PMPA.

**C.   Defendant's Acts That Lead to the Termination of the Agreements**

17.   The   Sub-Lease   Agreements   provide   that   one   of defendant's primary obligations is to make monthly rent payments. [Exhibits 1 (Camuy Station) and 3 (Aguada Station), Sub-Lease Agreements at p. 4, ¶ 4(a)].

18.   Beginning in or around the spring of 2012, defendant began to breach his obligation pursuant to the Sub-Lease Agreements to pay for all rent and gasoline due, and now owes PCPR approximately $157,530.00.

19.   At   some   point   thereafter,   defendant,   after depositing money in PCPR's bank account to pay for overdue rent and gasoline purchases, withdrew the funds from PCPR's bank account, an action which resulted in several "insufficient funds" transactions. [Plaintiff's Exhibit 5].

20.   Defendant's illegal withdrawals violated the terms of the Sub-Lease and Supply Agreements.  [Plaintiff's Exhibits 1

(Camuy Station) and 3 (Aguada Station) at p. 6, ¶ 7(b)(8)].
[Plaintiff's Exhibits 2 (Camuy Station) and 4 (Aguada Station) at
p. 4, ¶ 7(b)(8)].

21.   Defendant's default in failing to order gasoline
products from PCPR and to pay the monthly rent for both stations
has continued; defendant owes PCPR approximately $157,530.00 in
overdue rent and gasoline purchases to date. [Plaintiff's Exhibits
8-1 and 8-2].

22.   Defendant's default in failing to order gasoline
products from PCPR and to pay the monthly rent for both stations
violated the terms of the Sub-Lease and Supply Agreements.
[Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at
p. 6, ¶ 7(b)(1)]. [Plaintiff's Exhibits 2 (Camuy Station) and 4
(Aguada Station) at p. 4, ¶ 7(b)(1)].

23.   Defendant has ceased operating of both stations for
several months; the last purchase of gasoline at the Aguada station
occurred in September 2012 and the last purchase of gasoline at the
Camuy station occurred in November 2012. [Testimony of Francheska
Cortes and Carmen Centeno; Plaintiff's Exhibits 7-1 through 7-7].

24.   Since September 2012 to the present, defendant has
completely abandoned the Aguada station. [Testimony of Francheska
Cortes and Carmen Centeno; Plaintiff's Exhibits 7-2 through 7-7].

25.   Since November 2012 to the present, defendant has abandoned operations of the Camuy station, although he continues to operate a convenience store on those premises to this date. [Testimony of Francheska Cortes and Carmen Centeno; Plaintiff's Exhibit 7-1].

26.   By abandoning both stations, defendant violated the express provision in the Sub-Lease and Supply Agreements which requires him to operate both stations without any interruption for seven (7) consecutive days,[4] for the purpose of selling Texaco's petroleum products exclusively and for the purchase and prompt payment of any and all those products.   [Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 6, ¶ 7(b)(10); Plaintiff's Exhibits 2 (Camuy Station) and 4 (Aguada Station) at p. 4, ¶ 7(b)(10)].

D.   **The Termination Notice**

27.   On October 31, 2012, counsel for PCPR sent defendant a written notice stating that the franchise relationship between the parties was being terminated as pertains to the two stations, effective on November 10, 2012, due to defendant's various violations of the PMPA and Sub-lease and Supply Agreements; the

---

[4] The PMPA provides that failing to operate a premise for seven (7) consecutive days is grounds for the termination of a franchise relationship.   15 U.S.C. § 2801 (c)(9).

Civil No. 12-1973 (FAB)                                                   12

notice was sent by certified mail and also hand delivered to
defendant. [Plaintiff's Exhibit 6].

     28. The letter made it clear that PCPR was exercising
its right under the PMPA to cancel the Agreements within a notice
period of less than 90 days due to the nature of defendant's
repeated violations. [Plaintiff's Exhibit 6].

     29. The letter also indicated that the termination of
the franchise relationship did not waive PCPR's right to pursue:
(1) the payment of all monies owed to the company for overdue rent
and gasoline, (2) compensation for all damages suffered as a result
of defendant's actions, and (3) the return of full possession of
the stations to the company. [Plaintiff's Exhibit 6].

     **E.   Post-Termination Obligations**

     30. Upon termination of the existing agreements,
defendant ceased to be an authorized PCPR franchisee for Texaco
branded products.

     31. Defendant thus had the obligation to surrender all
Texaco property, including but not limited to, the stations
themselves, signs, and marks, in the same condition as they were
received, to discontinue the unauthorized use of that property, and
to discontinue the exhibition of the Texaco Marks by taking the
necessary measures to cover them from public display. [Plaintiff's

Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 8, ¶ 10; Plaintiff's Exhibits 2 (Camuy Station) and 4 (Aguada Station) at p. 4, ¶ 4(b)].

32. Defendant also had the obligation to pay all outstanding amounts owed to PCPR for rent and gasoline immediately, which to date total $157,530.000, in addition to the payment of all damages suffered by PCPR for equipment damage and/or loss of income, an amount contractually stipulated to being no less than $100,000.00. [Plaintiff's Exhibits 8-1 and 8-2; Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 7, ¶ 7(g)].

**F.   Breach of Post-Termination Obligations**

33. Defendant has failed to comply with his ongoing obligations of the terminated Agreements.

34. First, defendant has retained some form of possession over the stations in that he currently possesses and refuses to turn over the keys to both the Aguada and Camuy stations. [Testimony of Francheska Cortes and Carmen Centeno]. Defendant also currently possesses and refuses to turn over all of PCPR's equipment at both the Aguada and Camuy stations. The equipment possessed includes all items listed in the Sub-Lease Agreements of both stations. [Plaintiff's Exhibits 1 and 3 at Attachment B].

35.  Defendant's retention of the keys to the stations prevents PCPR from having access to, or taking possession of, the stations and exposes PCPR to potential liability under applicable environmental laws, rules, and regulations.

36.  Second, to date defendant continues to exhibit the Texaco Marks at both stations illegally because they have not been removed or covered as required by the Agreements; these actions have resulted in the dilution of the Texaco Mark and PCPR's loss of goodwill and business on the island.  [Testimony of Francheska Cortes and Carmen Centeno; Plaintiff's Exhibit 7-1 through 7-7].

37.  The operation of both stations have been affected due to defendant's failure to order fuel, and PCPR's inability to reopen them for operation due to defendant's failure to cooperate in handing over full, undisturbed possession of both stations.

38.  This failure, together with the lack of interest in promoting the business, has in turn affected PCPR's share of the Puerto Rico market because of defendant's failure to have Texaco's products available for consumers.  Inevitably, these circumstances have damaged the Texaco brand reputation because of the message that it sends to the general public:  PCPR has fully equipped service stations without any Texaco-branded products to sell.

39. Third, defendant has refused to pay: (1) all amounts for overdue rent and gasoline that he is legally obligated to pay to PCPR, (2) PCPR's lost income because it has not been able to operate the stations for a period of several months, and (3) all equipment damages. Contractually, defendant is liable for a minimum stipulated sum of $100,000.00 for loss of income and equipment damages, in addition to what he owes for overdue gasoline and rent; an amount of at least $157,530.00.

40. Total damages owed are $257,530.006, plus attorneys' fees and costs. [Plaintiff's Exhibits 8-1 and 8-2; Plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada Station) at p. 7, ¶ 7(g)].

## III. CONCLUSIONS OF LAW

### A.   Introduction

This is a civil action for trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and for trademark dilution in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 (a) and (c). PCPR also seeks equitable relief to enjoin defendant from continuing to

exhibit  the  Texaco  Mark  at  the  two  stations  illegally.[5]

Defendant's acts disparage, dilute, and otherwise damage the value

of the Texaco marks because the defendant was terminated as a PCPR

defendant pursuant to the PMPA and is no longer authorized to use

those marks or operate the stations.  PCPR further seeks equitable

relief directing defendant to cease to display all Texaco marks at

both stations immediately because he has no authority to do so and

is thus violating PCPR's rights regarding them.

PCPR  also  seeks  declaratory  relief  pursuant  to  the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Rule 57 of

the Federal Rules of Civil Procedure.  PCPR requests to recover an

amount of approximately $157,530.00 for all gasoline purchases and

rent  due  to  date.   PCPR  also  wishes  to  recover  for  equipment

damages and loss of business or income from defendant in an amount

of no less than $100,000.00, pursuant to Articles 1044, 1054, 1077

and 1206, *et seq.*, of the Puerto Rico Civil Code ("Code"), P.R.

---

[5] Pursuant to a Trademark License Agreement which became
effective July 31, 2012, PCPR has the exclusive right to the use of
the trade name Texaco, and its related trade names and trademarks,
in the distribution and marketing of gasoline and petroleum related
products, amongst others, through authorized independent dealers
throughout the Commonwealth of Puerto Rico.

Laws Ann. tit. 31, §§ 2994, 3018, 3052, 3371, and 5141, and the

express terms of the Supply Agreement.[6]

Finally, PCPR seeks to evict defendant from the premises

where both stations are located pursuant to Article 1459 of the

Code, P.R. Laws Ann. tit. 31, § 4066 and protect the environment

and its absolute liability pursuant to Article 45 of the Code,

Environmental Public Policy, P.R. Laws Ann. tit. 12, § 8004n.

**B.   Violation of the Lanham Act and Trademark Dilution Act of 2006**

Defendant is fraudulently representing himself to the

general public and consumers as a PCPR franchisee by continuing to

demonstrate the Texaco brand while keeping the stations closed from

operation.  This action is causing confusion and mistake and is

deceiving consumers as to the origin, the licensing, and the

endorsing by PCPR of defendant's acts, which at this time is

affecting the value of the Texaco Marks and PCPR's goodwill.

Defendant's acts constitute trademark infringement in violation of

the Lanham Act, 15 U.S.C. § 1114, *et seq.*, and the Trademark

Dilution Revision Act of 2006, 15 U.S.C. § 1125(a).  Those acts

tarnish and dilute the Texaco Marks.  Defendant's acts have caused

---

[6] The express language of the Supply Agreements at page 7,
section 7, paragraph (g) draws a distinction between the amounts
owed for overdue rent and gasoline and for equipment damage and
loss of business income as a result of PMPA violations.

PCPR to suffer injury and damages of such a nature that monetary damages alone cannot adequately compensate PCPR for the loss suffered.  Defendant's acts are greatly and irreparably damaging PCPR and will continue to be greatly and irreparably damaging to PCPR unless enjoined and defendant is compelled to return the stations and equipment to PCPR fully and undisturbed because PCPR is without an adequate remedy at law.

    **C.**    **Trademark Infringement in Violation of Section 43(a) of the Lanham Act and the Trademark Dilution Revision Act**

At both stations, defendant has completely ceased gasoline operations while continuing to demonstrate the Texaco brand, creating the false impression that Texaco products are available to the public at the station on a daily basis, affecting not only the value of the Texaco marks, but also PCPR's goodwill. Defendant's acts falsely represent that defendant's services and products are legitimately approved by PCPR, which constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(a).  Defendant's acts are greatly and irreparably damaging PCPR and will continue to be greatly and irreparably damaging to PCPR unless enjoined.  Because an award of monetary damages cannot

Civil No. 12-1973 (FAB)                                                19

fully and adequately compensate PCPR for its losses, PCPR is without an adequate remedy at law.

   **D.   Violation of the Trademark Dilution Revision Act of 2006**

          Defendant has completely ceased gasoline operations at both stations while continuing to demonstrate the Texaco brand, creating the false impression that Texaco products are available to the public at the stations on a daily basis. This negative depiction of the Texaco Marks constitutes dilution, disparagement, tarnishment and diminishment of the Texaco trademarks, service marks, and product lines—all proscribed by Section 43(c) of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 *et seq.* Defendant's acts have caused and will continue to cause dilution, disparagement, diminution, and other damages to the value of the goodwill represented by, and of the distinctiveness of, the Texaco Marks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 *et seq.* Defendant's acts constitute, therefore, a violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, and the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125 *et seq.* Defendant's acts have caused PCPR to suffer injury and damages of such a nature that they may not be adequately

compensated by an award of monetary damages alone.  Defendant's acts are greatly and irreparably damaging PCPR and will continue to cause great and irreparable damages to PCPR unless enjoined. Because an award of monetary damages cannot fully and adequately compensate PCPR for its losses, PCPR is without an adequate remedy at law.

**E.  Injunction Instructing Defendant to Surrender the Texaco Signage and Marks to PCPR**

The PMPA was enacted to protect the franchised retailers ("franchisees") of motor fuel in their relationships with their franchisors and to provide a uniform set of rules to be used throughout the United States.  The statute specifically prohibits the enforcement of state and local laws that differ from it.  <u>See</u> 15 U.S.C. § 2806 (1994).  Pursuant to the PMPA, the protection of franchisees is achieved by delineating the circumstances pursuant to which termination or nonrenewal of the franchise relationship is permissible, and the procedure a franchisor must follow for such termination or nonrenewal.  Congress also fully recognized the legitimate needs of a franchisor to be able to terminate or not renew a franchise relationship based upon certain actions of the franchisee.

Pursuant to the PMPA, 15 U.S.C. § 2802(b)(2)(C), a franchisor, such as PCPR, may base a termination and nonrenewal on "the occurrence of <u>an event</u> which is relevant to the franchise relationship and as a result of which termination or nonrenewal of the franchise relationship is reasonable . . . ." (Emphasis ours). 15 U.S.C. § 2802(c)(8) (1994) (Emphasis ours). The PMPA requires the furnishing of effective written notice to the franchisee of a termination or nonrenewal, at least ninety (90) days prior to the effective date of such termination <u>or</u> nonrenewal, **or within any lesser period** when, under the circumstances, it would be unreasonable to furnish 90-day notice. <u>See</u> 15 U.S.C. § 2804 (1978) (Emphasis ours).

The cancellation of the Agreements and request for turning over of the stations within a period less than 90 days was warranted in light of the serious damages that PCPR is suffering on a daily basis to its goodwill and brand name as described above and the potential liability that PCPR faces for violations of Environmental Federal Law due to defendant's failure to surrender full and exclusive possession of the stations to PCPR, his failure to pay for overdue rent and gasoline purchases, including his withdrawal of those payments from PCPR's bank account. Accordingly, PCPR's termination of the franchise relationship that

existed between it and defendant is a valid, legal and enforceable termination, effective as of the termination date, and in compliance with the applicable provisions of the PMPA.

Moreover, defendant has refused not only to surrender the Texaco Marks and signage but also to take the necessary measures to cease to display them to the public, all in open violation of the PMPA.  Defendant is currently maintaining both stations closed to consumers, while at the same time exhibiting the Texaco Marks. Defendant's acts have caused PCPR to suffer injury and damages of a nature that cannot be adequately compensated by an award of monetary damages alone.  Defendant's acts are greatly and irreparably damaging PCPR, and will continue to cause great and irreparable damages to PCPR unless enjoined.

Article 45(b) of the Environmental Public Policy Law ("EPP"), P.R. Laws Ann. tit. 12, § 8004n, specifically defines crude oil and its derivatives as a combustible fuel and a dangerous substance.   Article 46 of the EPP does not exempt from responsibility any party that may be responsible for an oil spill or any other type of dangerous substance.  It imposes absolute responsibility which in this case would be on PCPR.  See P.R. Laws Ann. tit. 12, § 8004o.  Additionally, Article 45 of the EPP makes liable any interstate entity that as owner, transfers title,

possession and the right to use the property to another through lease, license or permit.  See P.R. Laws Ann. tit. 12, § 8004n (b)(8)(B).  Regulation No. 4362 of the Control of Underground Storage Tanks of the Commonwealth of Puerto Rico's Environmental Quality Board ("EQB") is also applicable here.  Pursuant to this regulation, the EQB together with the Environmental Protection Agency, may hold the retailer operator, as well as the owner of the USTs or other equipment that causes the fuel spill liable.

Defendant's actions have hampered PCPR's ability to comply with the terms of the Consent Decree entered unto with the United States in the case of USA v. Chevron Puerto Rico, LLC, No. Civ. 11-01716 (CCC) (D. Puerto Rico, September 28, 2011), which requires that PCPR monitor the use of the underground storage tanks including those located on the premises of both stations.  PCPR has not been allowed full and undisturbed access to the premises of both stations in order to verify the status of its equipment accurately; defendant simply has acted in an unreasonable and non-accommodating fashion at all relevant times.  His actions create a constant and imminent threat of misuse of the equipment that can lead to a fuel spill causing serious environmental harm. The damages that such an accident can cause are irreparable, with the brunt of the responsibility being borne by PCPR even though it

is not able to access the station premises.  Because an award of
monetary damages cannot fully and adequately compensate PCPR for
its losses, PCPR is without an adequate remedy at law and defendant
should be enjoined.

     **F.   Indemnification, Damages, Attorneys' Fees, and Expenses**

     Pursuant to the terms of the Sub-Lease Agreements,[7] if
PCPR is made a party to any lawsuit or any legal action as a result
of any act by defendant resulting in non-compliance with the terms
of the Sub Lease Agreements, defendant must indemnify and hold PCPR
harmless from all expenses, fines, suits, proceedings, claims,
losses, damages, liabilities or actions of any kind or nature,
including but not limited to, costs and attorneys' fees.  As a
result of defendant's acts, PCPR is entitled to recover from
defendant its damages and the attorneys' fees and the expenses it
has incurred in bringing this action, pursuant to 15 U.S.C.
§§ 1114(1) and 1117(a), 15 U.S.C. § 1125(a) and (c), and the Puerto
Rico Civil Code.

     In sum, defendant is liable for any expense, cost, loss
or damage sustained by PCPR as a consequence of any claim made by
any person or entity as a result of defendant's deceptive and

---

[7] See, plaintiff's Exhibits 1 (Camuy Station) and 3 (Aguada
Station) at p. 8, ¶ 11.

illegal acts, including but not limited to, gasoline spills, leaks from the tanks, fires, explosions, slip and falls, and the like. Additionally, PCPR has not been allowed full and undisturbed access to both stations' premises to verify the status of its equipment accurately, due to defendant's failure to turn over possession of the equipment and keys to the stations, and has suffered several months of lost income resulting from the failure to operate the two stations.   Defendant is liable for a minimum stipulated sum of $100,000.00 for loss of income and equipment damages, in addition to what he owes for overdue gasoline and rent; an amount of $157,530.00 to date.   Total damages owed are $257,530.00, plus all attorneys' fees and costs.

## CONCLUSION

The Court finds that defendant's acts constitute trademark infringement and dilution in violation of federal and Puerto Rico law.   The Court **GRANTS** plaintiff PCPR's request for permanent injunctive relief; defendant is permanently enjoyed from using, and must cease to display, all Texaco marks at both stations immediately.   The Court also **GRANTS** plaintiff PCPR's request to evict defendant from the premises where both stations are located. Defendant must return the premises of both gas stations to the plaintiff immediately.   Finally, the Court **GRANTS** plaintiff PCPR's

Civil No. 12-1973 (FAB)                                                                26

request for damages for loss of income, equipment damages, overdue

payments for gasoline and rent in the amount of $257,530.00 and all

attorneys' fees and costs.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 28, 2013.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE